UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------

:

JOHN INGALLS, Individually and on Behalf of :    Case No._____
All Others Similarly Situated,

                :

           Plaintiff,     :    **CLASS ACTION COMPLAINT FOR**
                                      **VIOLATIONS OF THE FEDERAL**
    v.                   :    **SECURITIES LAWS**

                :

BUCKEYE PARTNERS, L.P., CLARK C.    :    JURY TRIAL DEMANDED
SMITH, PIETER BAKKER, BARBARA M.
BAUMANN, BARBARA J. DUGANIER,    :
JOSEPH A. LASALA, JR., MARK C.
MCKINLEY, LARRY C. PAYNE, OLIVER G.    :
RICHARD, III, FRANK S. SOWINSKI, and
MARTIN A. WHITE,              :

                :

           Defendants.    :

                :

--------------------------------------------------------

Plaintiff John Ingalls ("Plaintiff"), by his undersigned attorneys, for this complaint against

defendants, alleges upon personal knowledge with respect to himself, and upon information and

belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as

follows:

## NATURE OF THE ACTION

1.     This is a unitholder class action brought by Plaintiff on behalf of himself and all

other public unitholders of Buckeye Partners, L.P. ("Buckeye" or the "Company") against

Buckeye and the members of Buckeye's Board of Directors (the "Board" or the "Individual

Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of

1

1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Buckeye will be acquired by IFM Investors Pty Ltd ("IFM Investors"), through its IFM Global Infrastructure Fund ("IFM GIF," and together with IFM Investors, "IFM"), Hercules Intermediate Holdings LLC ("Parent"), and Parent's wholly-owned subsidiary Hercules Merger Sub LLC ("Merger Sub") (the "Proposed Transaction").

2.    On May 10, 2019, Buckeye and IFM issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated May 10, 2019 ("Merger Agreement") to sell Buckeye to IFM.  Pursuant to the terms of the Merger Agreement, each issued and outstanding unit of Buckeye representing limited partner interests in the Company will be converted into the right to receive $41.50 in cash (the "Merger Consideration").  The Proposed Transaction has an equity value of approximately $6.5 billion.

3.    On June 25, 2019, Buckeye filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Buckeye unitholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Wells Fargo Securities, LLC ("Wells Fargo"); (ii) potential conflicts of interest faced by Company insiders; and (iii) potential conflicts of interest faced by the Company's additional financial advisor, Intrepid Partners, LLC ("Intrepid").  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, as Buckeye unitholders need such information to cast a fully-informed vote in connection with the Proposed Transaction.

4.    In short, unless remedied, Buckeye's public unitholders will be forced to make a

voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the unitholder vote on the Proposed Transaction, unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.    This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Buckeye's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## PARTIES

8.    Plaintiff is, and has been at all times relevant hereto, a continuous unitholder of Buckeye.

9.    Defendant Buckeye is a Delaware limited partnership and a publicly traded Delaware master limited partnership with its principal executive offices located at One Greenway Plaza, Suite 600, Houston, Texas 77046. Buckeye owns and operates a diversified network of

integrated assets providing midstream logistic solutions, primarily consisting of transportation, storage, processing and marketing of liquid petroleum products.  The Company's partnership units representing limited partner interests trade on the New York Stock Exchange under the ticker symbol "BPL."

10.     Defendant Clark C. Smith ("Smith") has been Chairman of the Board since August 2014, Chief Executive Officer ("CEO") of the general partner of Buckeye, Buckeye GP LLC ("General Partner"), since February 2012, President of the General Partner since February 2009 and previously served as a director of the General Partner from October 2007 until February 2009.

11.     Defendant Pieter Bakker ("Bakker") has been a director of the General Partner since May 2011.

12.     Defendant Barbara M. Baumann ("Baumann") has been a director of the General Partner since September 2014.

13.     Defendant Barbara J. Duganier ("Duganier") has been a director of the General Partner since October 2013.

14.     Defendant Joseph A. LaSala, Jr. ("LaSala") has been a director of the General Partner since November 2010 and previously served as a director of the General Partner from April 2001 until July 2007.

15.     Defendant Mark C. McKinley ("McKinley") has been a director of the General Partner since October 2007.

16.     Defendant Larry C. Payne ("Payne") has been a director of the General Partner since September 2014.

17.     Defendant Oliver G. Richard, III ("Richard") has been a director of the General Partner since February 2009.

18.    Defendant Frank S. Sowinski ("Sowinski") has been a director of the General Partner since August 2006.

19.    Defendant Martin A. White ("White") has been a director of the General Partner since April 2009.

20.    Defendants identified in paragraphs 10 to 19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21.    IFM Investors is an Australian investment management company that specializes in debt investments, infrastructure, listed equities and private equity.  As of March 31, 2019, IFM had approximately $90 billion of funds under management.

22.    IFM GIF is IFM Investors' open-ended infrastructure fund.

23.    Parent is a Delaware limited liability company and was formed by a subsidiary of IFM GIF.

24.    Merger Sub is a Delaware limited liability company and wholly owned subsidiary of Parent.

## CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Buckeye common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

26.    Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

27.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of June 24, 2019, there were 153,920,704 Company units outstanding.  All members of the Class may be identified from records maintained by Buckeye or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

28.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

29.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

31.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on

6

behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and Proposed Transaction

32.    Buckeye is one of the largest independent liquid petroleum products pipeline operators in the United States in terms of volumes delivered, with approximately 6,000 miles of pipeline.  Buckeye also uses its service expertise to operate and/or maintain third-party pipelines and perform certain engineering and construction services for its customers.  Buckeye's global terminal network comprises more than 115 liquid petroleum products terminals with aggregate tank capacity of over 118 million barrels across its portfolio of pipelines, inland terminals and marine terminals located primarily in the East Coast, Midwest and Gulf Coast regions of the United States as well as in the Caribbean.  The Company's global network of marine terminals enables it to facilitate global flows of crude oil and refined petroleum products, offering its customers connectivity between supply areas and market centers through some of the world's most important bulk storage and blending hubs.

33.    In November 2018, Buckeye executed a definitive agreement to sell its 50% equity interest in VTTI B.V. ("VTTI") to Vitol Investment Partnership II Ltd and IFM Investors for approximately $975.0 million.  On January 17, 2019, Buckeye announced the sale closed.

34.    On February 8, 2019, Buckeye announced its fourth quarter and full year 2018 financial results.  For the quarter, net income was $482.5 million, compared to $126.3 million in the fourth quarter of 2017.  Net income attributable to Buckeye was $3.13 per diluted unit, compared to $0.85 per diluted unit in the fourth quarter of 2017.  Commenting on the results, defendant Clark stated:

> We have reduced our leverage, strengthened our balance sheet, increased our
> distribution coverage ratio and significantly improved our overall financial

7

flexibility as a result of our recently completed dispositions of the package of non-integrated domestic pipeline and terminal assets in December 2018 and our equity interest in VTTI in January 2019. . . . We believe these actions solidified our investment grade credit rating, eliminated the need for Buckeye to access the public equity markets and will allow us to reallocate capital to the higher return growth opportunities across our remaining assets, positioning us to provide solid returns for our unitholders over the long-term.

Buckeye also announced that the General Partner declared a cash distribution of $0.75 per limited partner unit for the quarter ended December 31, 2019.

35.     On May 10, 2019 Buckeye and IFM issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

HOUSTON and NEW YORK – May 10, 2019 – IFM Investors and Buckeye Partners, L.P. (NYSE: BPL) today announced a definitive agreement ("Agreement") under which the IFM Global Infrastructure Fund will acquire all of the outstanding public common units of Buckeye for $41.50 per common unit. The all-cash transaction is valued at $10.3 billion enterprise value and $6.5 billion equity value. The acquisition price represents a 27.5% premium to Buckeye's closing unit price on May 9, 2019 and a 31.9% premium to Buckeye's volume-weighted average unit price since November 1, 2018, which is the last trading day prior to Buckeye's announcement of certain strategic actions. Buckeye's Board of Directors unanimously approved the proposed transaction with IFM. The closing of the merger will be subject to approval of a majority of the Buckeye unitholders, certain regulatory approvals and other customary closing conditions.

Buckeye owns and operates one of the largest diversified networks of integrated midstream assets, including 6,000 miles of pipeline with over 100 delivery locations and 115 liquid petroleum products terminals with aggregate tank capacity of over 118 million barrels. Its network of marine terminals is located primarily in the East Coast and Gulf Coast regions of the United States, as well as in the Caribbean.

IFM is a pioneer and leader in infrastructure investing on behalf of institutional investors globally, with a 23-year track record of success. IFM has $90 billion of assets under management, including $39.1 billion in infrastructure, which it manages on behalf of more than 370 institutional investors, and takes a long-term approach to investing, with no pre-determined time divestiture horizon. IFM targets core infrastructure in developed markets and currently has interests in 32 investments across North America, Australia and Europe, including several midstream assets.

"This acquisition is aligned with IFM's focus on investing in high quality, essential infrastructure assets that underpin the economies in which they operate," said Julio Garcia, Head of Infrastructure, North America of IFM.

"We are pleased to have the opportunity to bring the Buckeye business and management team under the IFM umbrella," said Jamie Cemm, Executive Director of IFM. "The proposed acquisition of Buckeye is a complementary addition to IFM's substantial investments in energy infrastructure across North America and globally. We look forward to supporting the continuing growth of the business."

### Insiders' Interests in the Proposed Transaction

36.    Buckeye insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public unitholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public unitholders of Buckeye.

37.    Notably, it appears that certain Company insiders may have secured positions following consummation of the Proposed Transaction.   In the press release announcing the Proposed Transaction, Jamie Cemm, Executive Director of IFM, is quoted as stating, "We are pleased to have the opportunity to bring the Buckeye business and management team under the IFM umbrella."

38.    Company insiders also stand to receive substantial financial benefits for securing the deal with IFM.  According to the Merger Agreement, all Company phantom units, director deferred units, deferral units and performance units outstanding will be converted into the right to receive cash payments.  The following table sets forth the value of the Company equity awards Buckeye's insiders stand to receive:

| Name | Partnership Phantom Units | | Partnership Deferral Units/Partnership Director Deferred Units | | Partnership Performance Units (1) | | Distribution Equivalents with respect to Partnership Phantom Units and Partnership Performance Units (2) | Total ($) (3) |
|---|---|---|---|---|---|---|---|---|
| | # | ($) | # | ($) | # | ($) | ($) | ($) |
| **Executive Officers** | | | | | | | | |
| Clark Smith | 104,862 | $4,351,773 | 68,178 | $2,829,387 | 209,725 | $8,703,588 | $ 1,054,618 | $16,939,366 |
| Keith E. St.Clair | 29,996 | $1,244,834 | 36,690 | $1,522,635 | 59,988 | $2,489,502 | $ 308,286 | $ 5,565,257 |
| Robert Malecky | 24,157 | $1,002,516 | 36,638 | $1,520,477 | 48,312 | $2,004,948 | $ 235,269 | $ 4,763,210 |
| Khalid Muslih | 25,265 | $1,048,498 | 34,968 | $1,451,172 | 50,531 | $2,097,037 | $ 253,408 | $ 4,850,114 |
| William Hollis | 19,202 | $ 796,883 | 29,288 | $1,215,452 | 38,401 | $1,593,642 | $ 190,801 | $ 3,796,778 |
| Mark Esselman | 12,994 | $ 539,251 | 17,042 | $ 707,243 | 25,987 | $1,078,461 | $ 138,142 | $ 2,463,097 |
| Todd Russo | 18,423 | $ 764,555 | 20,654 | $ 857,141 | 36,844 | $1,529,026 | $ 188,465 | $ 3,339,187 |
| Joseph Sauger | 14,832 | $ 615,528 | 11,662 | $ 483,973 | 29,664 | $1,231,056 | $ 155,501 | $ 2,486,058 |
| Gary Bohnsack | 24,848 | $1,031,192 | 10,260 | $ 425,790 | 13,827 | $ 573,821 | $ 66,224 | $ 2,097,027 |
| **Directors** | | | | | | | | |
| Pieter Bakker | 3,583 | $ 148,695 | — | — | — | — | — | $ 148,695 |
| Barbara M. Baumann | 3,583 | $ 148,695 | — | — | — | — | — | $ 148,695 |
| Barbara J. Duganier | 3,583 | $ 148,695 | — | — | — | — | — | $ 148,695 |
| Joseph A. LaSala, Jr. | 3,583 | $ 148,695 | — | — | — | — | — | $ 148,695 |
| Mark C. McKinley | 3,583 | $ 148,695 | 598 | $ 24,817 | — | — | — | $ 173,512 |
| Larry C. Payne | 3,583 | $ 148,695 | — | — | — | — | — | $ 148,695 |
| Oliver "Rick" G. Richard, III | 3,583 | $ 148,695 | — | — | — | — | — | $ 148,695 |
| Frank S. Sowinski | 3,583 | $ 148,695 | — | — | — | — | — | $ 148,695 |
| Martin A. White | 3,583 | $ 148,695 | — | — | — | — | — | $ 148,695 |

39.     Further, if they are terminated in connection with the Proposed Transaction, the Company's named executive officers stand to receive substantial cash severance payments, as set forth in the following table:

**Potential Payments to Named Executive Officers**

| Name | Cash Severance ($) (1) | Equity ($) (2) | Benefits ($) (3) | Total ($) |
|---|---|---|---|---|
| Clark Smith | $2,021,895 | $16,939,366 | $27,126 | $18,988,386 |
| Keith E. St.Clair | $1,193,400 | $ 5,565,257 | $26,286 | $ 6,784,943 |
| Robert Malecky | $1,071,000 | $ 4,763,210 | $27,034 | $ 5,861,243 |
| Khalid Muslih | $1,071,000 | $ 4,850,114 | $27,187 | $ 5,948,301 |
| William Hollis | $ 907,800 | $ 3,796,778 | $17,673 | $ 4,772,251 |

## The Proxy Statement Contains Material Misstatements and Omissions

40.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Buckeye's unitholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's unitholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

41.     Specifically, as set forth below, the Proxy Statement fails to provide Company unitholders with material information or provides them with materially misleading information concerning: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Wells Fargo; (ii) potential conflicts of interest faced by Company insiders; and (iii) potential conflicts of interest faced by the Company's additional financial advisor, Intrepid.  Accordingly, Buckeye unitholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Wells Fargo's Financial Analyses***

42.     The Proxy Statement describes Wells Fargo's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Wells Fargo's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Buckeye's unitholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Wells Fargo's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Buckeye's unitholders.

43.     With respect to Wells Fargo's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the metric to which the perpetuity growth rates were applied to derive the terminal value; (ii) quantification of the terminal value calculated by Wells Fargo in the analysis; (iii) the implied terminal value multiples resulting from the analysis; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 7.84% to 8.34%.

44.    With respect to Wells Fargo's *Discounted Distributions Analysis*, the Proxy Statement fails to disclose: (i) the metric to which the perpetuity growth rates were applied to derive the terminal value; (ii) quantification of the terminal value calculated by Wells Fargo in the analysis; and (iii) quantification of the specific inputs and assumptions underlying the cost of equity range of 9.80% to 10.30%.

45.    When a banker's endorsement of the fairness of a transaction is touted to unitholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

46.    The omission of this information renders the statements in the "Opinion of the Partnership's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

47.    The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's insiders.

48.    For example, in the May 10, 2019 press release announcing the Proposed Transaction, IFM's Executive Director Cemm is quoted as stating, "We are pleased to have the opportunity to bring the Buckeye business and management team under the IFM umbrella." Additionally, the Proxy Statement sets forth:

> Pursuant to the merger agreement, the Partnership may grant cash retention bonuses to the employees of the Partnership and its subsidiaries (which, under the merger agreement, includes ServiceCo) including the Partnership's executive officers, subject to Parent's consent. As of the date of this proxy statement, no determinations have been made as to whether any executive officer will receive any such award.

Proxy Statement at 79.    Yet, the Proxy Statement fails to disclose whether any members of Buckeye management are expected to continue with the post-close company, the details of all

employment and retention-related discussions and negotiations, including discussions and negotiations related to certain cash retention bonuses that the Company may grant to its employees, that occurred between IFM and Buckeye's executive officers or directors, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of IFM's prior proposals or indications of interest mentioned management retention in the combined company.

49.     This information is necessary for unitholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's unitholders.

50.     The omission of this information renders the statements in the "Background of the Merger" and "Interests of the Partnership's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Intrepid's Potential Conflicts of Interest***

51.     The Proxy Statement further fails to disclose the potential conflicts of interest faced by the Company's additional financial advisor Intrepid that advised the Company during the process leading up to the Merger Agreement.

52.     For example, the Proxy Statement fails to disclose the amount of compensation Intrepid will receive in connection with its engagement, as well as the amount of Intrepid's compensation that is contingent upon consummation of the Proposed Transaction. Further, the Proxy Statement fails to disclose whether Intrepid has performed past services for IFM, Buckeye,

or their affiliates, as well as the timing and nature of such services and the amount of compensation received by Intrepid for such services.

53.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

54.     The omission of this information renders the statements in the "Opinion of the Partnership's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

55.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the unitholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

56.     Plaintiff repeats all previous allegations as if set forth in full.

57.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

58.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  The Proxy Statement misrepresented and/or omitted material facts, including material information about the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor; and potential conflicts of interest faced by Company insiders and the Company's additional financial advisor.

59.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable unitholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to unitholders.

60.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

61.    Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Class Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

62.    Plaintiff repeats all previous allegations as if set forth in full.

63.    The Individual Defendants acted as controlling persons of Buckeye within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Buckeye and participation in or awareness of the Company's operations or

intimate knowledge of the statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

64.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

66.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

67.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

68.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Buckeye, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Buckeye unitholders;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  June 28, 2019                    **WEISSLAW LLP**

By

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*